UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JEFFERY HUFFMAN, ET AL           CIVIL ACTION NO. 15-cv-2471

VERSUS           JUDGE HICKS

MAXX OILFIELD SERVICES, LLC           MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Pro Oilfield Services, LLC ("Defendant"), formerly known as Maxx Oilfield Services, LLC, provides oilfield services to customers in various states, including Texas and Louisiana. Two of Defendant's Texas employees filed a Fair Labor Standards Act ("FLSA") suit against it in the Southern District of Texas and asserted a claim for overtime wages. A few months later, two of Defendant's Louisiana employees filed their own FLSA suit in this court.

Before the court is Defendant's Motion to Transfer Venue (Doc. 15) based on the first-to-file rule. Defendant asks that this court transfer this case to the Texas federal court, which may assess how the potentially overlapping cases can best be administered. For the reasons that follow, it is recommended that the motion be granted.

**First-to-File Rule**

Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. <u>Cadle Co. v. Whataburger of Alice, Inc.</u>, 174 F.3d 599, 603 (5th Cir.

1999). The rule rests on principles of comity and sound judicial administration. It is intended to avoid the waste of duplication, avoid rulings which may trench upon the authority of sister courts, and avoid piecemeal resolution of issues that call for a uniform result. Id.

The rule does not require that cases be identical. The crucial inquiry is one of "substantial overlap." Save Power, Ltd. v. Syntek Finance Corp., 121 F.3d 947, 950 (5th Cir. 1997). The general rule is that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed, be consolidated, or administered otherwise. Id. Finally, complete identity of parties is not required for transfer of a case if the cases are substantially related. Id. at 951.

**Relevant Facts**

Two of Defendant's employees who worked in Texas (the "Texas Plaintiffs") filed their FLSA complaint in the Southern District of Texas, Houston Division. Each plaintiff alleged that they worked, mainly in south Texas, as a Test Operator/Field Service worker. Each described his duties as including but not limited to maintaining and servicing oil and gas production facilities, and overseeing the testing and monitoring of wells, pumps, storage facilities, and other pressure control equipment.

The Texas Plaintiffs alleged that they and similarly situated employees were paid salary plus a day-rate, but they claim the FLSA entitled them to overtime pay for hours worked over 40 hours in a work week. A copy of the Texas Plaintiffs' complaint is attached to Doc. 15 as Exhibit B. The Texas Plaintiffs sought certification of their case as a collective

action on behalf of similarly situated employees. The Texas court issued a notice (Doc. 15, Exhibit C) to employees who worked for Defendant "as a 'torque and test crew member' in the United States within the past three years and were paid a salary plus one or more day rate payments." The notice referred at least two more times to the case being brought on behalf of "torque and test crew members" and stated that Defendant claimed the employees were exempt from the FLSA under the Federal Motor Carrier Safety Act exemption.

Defendant presents evidence attached to its reply brief (Doc. 19) that, when tasked with providing names and addresses of torque and test crew members, its Human Resources Director included every current and former employee who worked in the torque and test, mixing plant, and/or wire line lubrication (a/k/a pressure control; a/k/a grease) service lines within the relevant time period and who were paid a salary plus job bonuses. Among those employees were the four who later filed this Louisiana suit. Defendant does not explain why it provided the names and addresses of such a broad group of employees, rather than only those torque and test crew members.

Three of Defendant's Louisiana employees commenced this action, and they later added a fourth plaintiff. Each man described himself as a "grease operator" who was employed as a well pressure control operator. The four (the "Louisiana Plaintiffs") alleged that they regularly worked 13 to 14 hours a day for five to seven days a week, and they were paid a salary plus an additional day rate per job. They claimed that the FLSA entitles them to overtime compensation. They also asked for penalty wages pursuant to La. R.S. 23:633 for failure to pay the full amount of wages when due, plus payment for accrued but unused

vacation time. The Louisiana Plaintiffs have not requested certification of a collective action. They asserted only their own claims.

**Analysis**

Defendant argues that the subject matter of both suits is the same: Both cases seek unpaid overtime wages for the three-year period prior to filing suit, and the plaintiffs in both cases are torque and test crew members who were paid on the same (challenged) basis. Defendants cite district court decisions that have transferred second-filed FLSA actions when the suits were substantially similar. See, e.g., White v. Peco Foods, Inc., 546 F.Supp.2d 339 (S.D. Miss. 2008).

The Louisiana Plaintiffs respond that their job duties and place within the company structure make them sufficiently distinct from the Texas Plaintiffs that the first-to-file rule does not apply. They submit the affidavit of Jeffery Huffman, one of the plaintiffs. Doc. 18. Huffman testifies that he and his fellow Louisiana Plaintiffs worked for Defendant as pressure control operators. They worked on well sites in Louisiana and Texas, but they were assigned to the Shreveport office. They sent their reports of days worked and other paperwork to Defendant's business office in Houma, Louisiana, where their paychecks were processed. (Huffman does not say whether the Texas Plaintiffs reported to a different office.)

Huffman testifies that he served at one time as district manager of pressure control. During the time he was employed by Defendant, the company had three service divisions: pressure control services, mixing plants, and torque & test. Each service line had a separate chain of management. For example, the torque and test division in South Texas had one

district manager, and the torque and test division in Louisiana had its own district manager. And the district manager of one service line (pressure control) had no supervisory authority over the other lines (such as torque & test). Huffman states that when he was district manager of pressure control, he had no authority over the torque and test crew members, and the managers of the torque and test division had no authority over pressure control operators. It was the same for mixing plant.

Huffman describes the pressure control services performed by the Louisiana Plaintiffs as involving the use of valves, injection systems and equipment to maintain well pressure whenever the well is opened after drilling and during completion. The pressure control equipment is attached to the wellhead by a flange. Huffman testifies that the torque and test technicians torque the bolts of the flange to the wellhead using a hydraulic torque wrench. The pressure control operators then thread their equipment to the flange and operate it. The pressure control operators are also sometimes called "grease operators" because of the honey oil or grease they inject into the grease head.

Huffman emphasizes that torque and test is a separate service line that performs different job duties from those performed by crew members in the other service lines such as pressure control. In his experience, pressure control employees did not perform torque and test duties, and torque and test crew members were neither qualified nor certified to work as pressure control operators.

The Louisiana Plaintiffs also point to a legal distinction between the cases. The notice of collective action in the Texas suit states that Defendant asserts that its torque and test crew

members were exempt from the FLSA under the Federal Motor Carrier Safety Act exemption because those employees had job duties that affect the safety of operation of motor vehicles on public highway and interstate commerce. That exemption states that the FLSA's overtime requirement shall not apply to an employee with respect to whom the Secretary of Transportation has power to establish qualifications and the maximum hours of service. The law permits the Secretary to establish those requirements for employees who drive vehicles over 10,000 lbs. and who meet two other requirements. Olibas v. Barclay, ___ F.3d ___, 2016 WL 5239699, *3 (5th Cir. 2016).

Mr. Huffman testifies that he and his fellow Louisiana Plaintiffs drove Ford F-250 pickup trucks, provided by the company, that weighed less than 10,000 lbs. They did not haul or transport their equipment, they were not required to have a commercial driver's license, and they did not tow any trailers or other equipment to job sites. Rather, the company had a designated driver whose specific job was to haul and transport the pressure control equipment. Huffman states that when he was a manager he had a driver designated to drive a larger Ford F-450 truck to haul the pressure control equipment for the pressure control operators. Defendant filed a reply, but it did not address the potential (non)application of the Motor Carrier Exception defense with respect to the Louisiana Plaintiffs.

**Analysis**

The Louisiana Plaintiffs have made a persuasive presentation that their jobs and place within the company structure are different from those of the Texas Plaintiffs. They have not,

however, demonstrated that those differences will make the assessment of their FLSA compensation claims significantly different. They present facts to suggest the Motor Carrier Exception invoked in the Texas case would not apply to the Louisiana Plaintiffs, but the claims need not be identical to be substantially similar for purposes of the first-to-file rule. The same is true with respect to the Louisiana Plaintiffs' state law claims, the presence of which do not prevent the application of the doctrine. If the Louisiana Plaintiffs were to have their claims resolved in the Texas court, that court would be fully capable of applying the relatively straightforward Louisiana laws that apply to those claims.

When deciding whether issues raised in two cases substantially overlap, courts have looked to whether the core issue was the same or if much of the proof adduced would likely be identical. The cases should be more than merely related, but substantial overlap does not require that the parties and issues be identical. They need only involve closely related questions or common subject matter. Technology Ins. Co. v. Ben E. Keith Co., 2015 WL 4367597, *2 (N. D. Tex. 2015). And if the court in the later-filed action finds that the issues involved are likely to substantially overlap, it should allow the first-filed court to resolve the question of whether both the cases should be consolidated, transferred, or administered in some other fashion. Wells Fargo Bank NA v. West Coast Life Ins. Co., 631 F.Supp. 2d 844, 846-47 (N. D. Tex. 2009).

It appears that the core issue in the two cases is whether Defendant's employees are entitled to overtime under the FLSA or whether their salary-plus compensation scheme is lawful. There are potentially differences and distinctions between the Louisiana Plaintiffs

and the Texas Plaintiffs, but that is often the case even in a single collective action, which requires only that the several plaintiffs be similarly situated.

The Louisiana Plaintiffs insist that they do not even qualify as collective members of the Texas suit because they are not torque and test crew members. Defendant has, however, treated them as such, and official notice of the Texas suit was sent to the Louisiana Plaintiffs to allow them to join it. There is certainly a dispute on this issue, and Defendant has not squarely explained why it included employees outside the torque and test crews in the group that received notice. Was there something in the Texas proceedings beyond the notice terms that required it? Was it done out of an abundance of precaution of running afoul of the Texas court's order? Was it a tactical effort to prevent satellite or other litigation such as this? The record does not say. The issue is best suited for resolution by the Texas court that is overseeing the original collective action. If it is determined that the Louisiana Plaintiffs have no place in the Texas suit, and the transfer was brought about by other than good faith proceedings by Defendant, the court may take appropriate steps to remedy any unwarranted prejudice or expense that the transfer caused the Louisiana Plaintiffs.

After considering the applicable law and relevant facts, the undersigned believes that the best exercise of this court's discretion is to transfer this case to the Southern District of Texas and allow that court, which is more familiar with the proper scope of the first-filed collective action, to assess whether the Louisiana Plaintiffs should be made a part of that case or have their claims adjudicated separately. If the Texas court determines that the claims warrant separate adjudication, it may elect to return the case to this court. This procedure

will, at worst, occasion some delay. But dutiful application of the first-to-file rule will avoid the risk of duplications of efforts and, perhaps most important, potentially conflicting rulings regarding the lawfulness of compensation of employees who work similar jobs for the same company.

Accordingly,

**IT IS RECOMMENDED** that Defendant's **Motion to Transfer Venue (Doc. 15)** be **granted** and that this civil action be **transferred** to the Southern District of Texas, Houston Division.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of September, 2016.

Mark L. Hornsby
U.S. Magistrate Judge